Mr. Justice BuiHcu
delivered the - opinion of the judges, who were unanimously with the defendant on every ground. He observed, that the governing principles by which this case, and all others of the like kind had been, and were to be decided, were borrowed from the civil law, and incorporated into, and now made a part of the common law of this country, viz. “ that a sound price deserves a sound “ commodity,” and that wherever there is “ a failure of “ consideration, a misrepresentation, or concealment of mate- “ rial circumstances,” it vitiates the contract in toio ; or entitles the party injured to such a reasonable abatement in the price of the thing sold or demanded, as would make him full reparation for any injury sustained by reason of such unsoundness, failure, misrepresentation or concealment, according to the nature and circumstances of every *18 such case. Of all such circumstances and injuries, whatever their extent might be, the juries of this country, under the direction of the common law courts, were as competent to determine', wherever they could be traced out and established by legal testimony, as a court of equity. That in the exercise of this power, the courts of common law, always had been and ever would be extremely cautious in charging juries, so as to guard against the too easy and frequent admission of testimony, which might go to render contracts insecure. That good faith and confidence ought to be maintained by men in their mutual dealings and transactions with each other. That men were free to contract and make bargains, or to let them alone, as they thought proper ; but when once made, they were binding, and the contractors ought to be held to them, in all cases, unless they came fairly within the above exceptions ; and then it was proper and just, for juries to interfere and do substantial justice between the parties, by giving such verdicts as would place both of them in their original situation, or give partial satisfaction for partial injuries.
A court of common law jg equally competent with a court of equity, to rescind and get aside contracts on the grounds of fraud, where such grounds can he traced out by common law rules of evidence.
J3onUtt. 81.
Public Laws, 5546,
That the principles of our discount act of the legislature, passed in 1759, and made perpetual by the act of 1783, coincided with the rules of the civil law, by permitting a defendant to set off by way of discount against the plaintiff’s demand, any cause, matter, or thing in his own right, and springing out of the same transaction, which went either to defeat the plaintiff’s right, or to require an abatement in his demand; which renders it highly presumable, that the legislators of tbat day, had the principles of the civil law ia View, when they passed that act.
In comparing this case with the foregoing rules, he said, there could be little doubt, but that this contract ought to be set aside on the ground of fraud or misrepresentation. The object the defendants had in view, was the sawing of lumber for the Charleston market. The land, it was^ admitted, was of little or no value, but for the timber growing on it. A good stream of water, and a mill-seat, therefore, were essentially ntcessary for carrying into effect, the ob *19 ject the purchasers had in contemplation, and without these, their ends never could have been answered. The plat produced at the sale, represented upon the face of it, these essential requisites. It carried, therefore, fa lshood and misrepresentation in its front; well calculated to take in, and deceive unwary men, who were likely to trust to such representations made by public men in the execution of a public trust. There was nothing better calculated to impose upon a purchaser, than a plat which had the appearance of an actual survey and observation, with explanatory notes made upon it. Many an unfortunate European had been deceived by the American land speculators, in the same manner ; and unfortunately, too many of the purchasers had been ruined by fit. It was said the commissioners were ignorant of it ; they did not know that there was no such stream. But that made no sort of difference, as to the real existent facts ; for it was the same thing to the purchaser, whether they knew, or did not know, there was this stream ; for it is a well known rule of the civil law, that where the defects ,of a thing sold were unknown to the seller, he shall be bound not only to take it back, but to indemnify the purchaser or buyer, as to all the charges the sale has put him to. The receipt of a full or valuable consideration in lazu, raises an implied -warranty, against all faults, known and unknown to the seller ; with this difference, that in cases of wilful concealment, the party guilty of the fraud, is liable for damages, in addition to all legal and just charges.
1 Domat. 8i„
a sound price sound^com-uierknownor unknown t#
As to the other grounds taken in support of the motion for a new trial, they all follow the main or principal one, already discussed. A fraud practised upon the agent, was a fraud through him on the principals, and went radically to the dissolution of the sale. Any misrepresentation calculated to deceive, went to impair a contract, as much as parol declarations by the sellers, to that effect. And as to the effect of sales in general, there was no difference between public and private ones, as to defects in the thing itself sold, except as to incumbrances, which might be well *20 ascertained by due diligence. Holding out false representations therefore by any of the public agents, went as effectually to render a sale invalid with the state, as if it had been practised by an individual citizen.
Rule for new trial discharged.
Present, Burke, Grimice, Waties and Bay.